SEYFARTH SHAW LLP
Joshua A. Rodine (SBN 237774)
jrodine@seyfarth.com
Barri Lyn Friedland (185148)
bfriedland@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
CONCORDE CAREER COLLEGES, INC.
(erroneously named "Concorde Career College")

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BANKSTON-BRADSHAW,<br><br>Plaintiff,<br><br>v.<br><br>CONCORDE CAREER COLLEGE; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. ___2:24-cv-4794___<br><br>(San Bernardino County Superior Court, Case No. CIVSB2413668)<br><br>**DEFENDANT CONCORDE CAREER COLLEGE'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>*[Filed Concurrently With Defendant Concorde Career Colleges, Inc.'s; Declaration Of Jennifer Rojas; Declaration Of Joshua A. Rodine; Certification Of Interested Parties; Corporate Disclosure Statement; Civil Cover Sheet; And Proof of Service]*<br><br>Complaint Filed:    April 19, 2024<br>Complaint Served:  May 10, 2024<br>Trial Date: |

311475777v.2

To the United States District Court for the Central District of California and to all parties of record:

Please take notice that Defendant Concorde Career Colleges, Inc., ("Defendant") hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446, based on federal question jurisdiction and diversity of citizenship jurisdiction, in order to effectuate the removal of the above-captioned action from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California. Defendant states that removal is proper for the following reasons:

I.    **BACKGROUND**

1.    On April 19, 2024, Plaintiff Kimberly Bankston-Bradshaw ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of San Bernardino, entitled, *Kimberly Bankston-Bradshaw v. Concorde Career College; and DOES 1 through 20, inclusive*, designated as Case No. CIVSB2413668. In the Complaint, Plaintiff asserts four causes of action: (1) gender and racial discrimination in violation of Government Code § 12940; (2) failure to prevent discrimination and retaliation in violation of Government Code § 12940(k); (3) retaliation and wrongful termination in violation of public policy; and (4) violation of California Civil Code Section 43.

2.    On May 10, 2024, Plaintiff served Defendant through its registered agent for service or process. True and correct copies of these documents served on Concorde are attached as **Exhibit 1**.

3.    On June 3, 2024, Concorde filed its Answer to the Complaint in San Bernardino County Superior Court. A true and correct copy of Concorde's Answer filed in San Bernardino County Superior Court is attached as **Exhibit 2**.

4.    **Exhibit 1** and **Exhibit 2** constitute all of the pleadings properly served on Concorde or filed by Concorde in the state court action prior to filing this Notice of Removal. The only hearing currently scheduled in the state court action is a Case

DEFENDANT'S NOTICE OF REMOVAL
311475777v.2

Management Conference set for November 4, 2024, in Department S30 of the San Bernardino County Superior Court.

## II.    TIMELINESS OF REMOVAL

5.    A notice of removal is timely if it is filed within 30 days after the service of the complaint or summons. 28 U.S.C. §1446(b)(1) ("The notice of removal … shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant ….").

6.    The service of process that triggers the 30-day period to remove is governed by state law. *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law."); *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law."). Section 415.10 of the California Code of Civil Procedure provides that "[a] summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery." *Id*.

7.    Concorde's Notice of Removal is timely, because it is filed on June 7, 2024, which is within 30 days of service of the Summons and Complaint on May 10, 2024. (**Exhibit 1**); *see*, *e.g.*, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) ("[W]e hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint ….").

## III.    JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

8.    The Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1). As set forth below, this action is removable pursuant to 28 U.S.C. § 1441(a)

DEFENDANT'S NOTICE OF REMOVAL

as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

### A.   Plaintiff Is a Citizen of California

9.     "An individual is a citizen of the state in which he is domiciled …." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (holding that "the place of residence is prima facie [evidence of] domicile").

10.     Plaintiff was employed by Concorde in the State of California in the County of San Bernardino, until she was terminated in August 2023. (Declaration of Jennifer Rojas ["Rojas Dec."] ¶¶ 5-6.) Plaintiff's home address during the entire time period that she worked for Concorde, was within the State of California. (*Id.*) There are no documents in Plaintiff's personnel file to suggest that, at any time during her employment, she was a resident or citizen of any state other than California. (*Id.*)

### B.   Concorde Is Not a Citizen of California

11.     For diversity purposes, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities.… [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve

DEFENDANT'S NOTICE OF REMOVAL

center,' and not simply an office where the corporation holds its board meetings[.]" *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

12.    Concorde is and was at the time of the institution of this civil action, a corporation formed under the laws of the State of Delaware and has its headquarters and its principal place of business in Mission, Kansas. (Rojas Dec. ¶¶ 3-4.)

13.    The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp.*, 559 U.S. at 80-81, 92-93. Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

14.    Under the "nerve center" test, Kansas emerges as Defendant's principal place of business. Defendant's corporate headquarters are located in Mission, Kansas where Defendant's high level officers direct, control, and coordinate Defendant's activities. (Rojas Dec. ¶ 4.) Defendant's high level corporate officers maintain offices in Kansas, and many of Defendant's corporate level functions are performed in the Kansas office. (*Id.*) Additionally, many of Defendant's executive and administrative functions, including corporate finance and accounting, are directed from the Mission, Kansas office. (*Id.*)

15.    Accordingly, pursuant to 28 U.S.C. section 1332(c), Concorde is a citizen of Delaware and Kansas for diversity purposes.

## C.    DOE DEFENDANTS' CITIZENSHIP

16.    The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

17.    Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal

311475777v.2

1  jurisdiction under 28 U.S.C. § 1332. *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971
2  (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes
3  and becomes relevant only if and when the plaintiff seeks leave to substitute a named
4  defendant"); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980)
5  (unnamed defendants are not required to join in a removal petition). Thus, the existence
6  of Doe defendants 1 through 20, inclusive, does not deprive this Court of jurisdiction.

7  **IV.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

8          18.    While Concorde denies any liability as to Plaintiff's claims, the amount in
9  controversy requirement for diversity jurisdiction is satisfied because "it is more likely
10 than not" that the amount exceeds the jurisdictional minimum of $75,000. 28 U.S.C.
11 § 1332(a)(1); *see Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)
12 (where a state court complaint does not specify a particular amount of damages, the
13 defendant must provide evidence establishing that it is "*more likely than not*" that the
14 amount in controversy exceeds the requisite threshold) (emphasis added).

15         19.    Where a complaint does not allege a specific amount in damages, the
16 removing defendant bears the burden of proving by a *preponderance of the evidence* that
17 the amount in controversy exceeds the statutory minimum. *Abrego v. The Dow Chem.*
18 *Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Guglielmino v. McKee Foods Corp.*, 506 F.3d
19 696, 701 (9th Cir. 2007). Furthermore, "the amount-in-controversy inquiry in the removal
20 context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d
21 1115, 1117 (9th Cir. 2004) (finding that a court may consider facts presented in the
22 removal petition). When the amount in controversy is not apparent from the face of the
23 complaint, a defendant may set forth underlying facts supporting its assertion that the
24 amount in controversy exceeds the jurisdictional threshold. *Id.*; *see also Gaus v. Miles,*
25 *Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

26         20.    As the Supreme Court has explained, "a defendant's notice of removal need
27 only include a plausible allegation that the amount in controversy exceeds the
28 jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S.

311475777v.2

81, 87, 135 S. Ct. 547, 553-54 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *see also Valdez*, 372 F.3d at 1117 ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). Defendant(s) are not obligated to "research, state, and prove the plaintiff's claims for damages." *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)); *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is "what is in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

21.    In determining whether a complaint meets the $75,000 threshold under 28 U.S.C. section 1332(a), the Court must consider a plaintiff's alleged aggregate damages, special damages, punitive damages, and attorneys' fees. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees may be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be taken into account in determining amount in controversy where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages).

22.    The calculations supporting the amount in controversy are based on Plaintiff's *potential* recovery pursuant to the claims alleged in the Complaint, assuming, without any admission, the truth of any of the allegations, and assuming liability (which Concorde vehemently disputes) based on Plaintiff's theory of recovery.

23.    Here, Plaintiff alleges, under various legal theories, that "As a direct, foreseeable and proximate result of Defendants' behavior, Plaintiff has suffered, and continues to suffer, damages in an amount according to proof at trial." (**Exhibit 1**—Compl. ¶ 56.)

DEFENDANT'S NOTICE OF REMOVAL

311475777v.2

24.    Additionally, in her Prayer for Relief, Plaintiff seeks "actual damages," "special damages," "consequential damages," "exemplary damages," "restitution of all unpaid wages," "costs incurred," "attorneys' fees," and "double damages pursuant to Section 972 of the California Labor Code." (**Exhibit 1**—Compl. 16:14-17:8.)

25.    **Compensatory Damages**. In her Complaint, Plaintiff seeks to recover "actual damages, including loss of past and future earnings." (**Exhibit 1**—Compl. 16:14-15.)

26.    Plaintiff was initially hired as an academic dean, but was promoted to Campus President in October 2022. (Compl. ¶¶ 12-13.) Plaintiff's annual salary at the time of her termination was approximately $175,100.12. (Rojas Dec. ¶ 7.) Plaintiff alleges she was terminated on or about August 21, 2023. (Compl. ¶ 38.) Conservatively estimating a April 2025, trial date (twelve months after the Complaint was filed), Plaintiff's lost wages alone would amount to approximately $291,834; i.e., twenty months between her alleged termination and trial.

27.    In addition to back pay, a plaintiff who prevails on a claim for wrongful termination or discriminatory discharge of employment may be entitled to either reinstatement or an award of "front pay" in lieu of reinstatement. *See*, *e.g.*, *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1997) (stating that a court has discretion to award front pay in lieu of reinstatement); *Secru v. Laboratory Corp. of America*, No. 3:09–cv–0619–LRH–RAM, 2009 WL 3755763, at * 2, n.3 (D. Nev. Nov. 9, 2009) (future lost wages alone can satisfy amount in controversy); *James v. Childtime Childcare, Inc.*, No. Civ. S-06-2676 DFL DAD, 2007 WL 1589543, at *2, n.1 (E.D. Cal. June 1, 2007) (while courts evaluate the amount in controversy at the time of removal, future lost wages are properly considered in that calculation); *see also Crum v. Circus Circuit Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (future damages are properly considered in determining amount in controversy).

28.    An award of three years' front pay would entitle Plaintiff to more than $525,000 in additional recovery. *See Traxler v. Multnomah County*, 569 F.3d 1007, 1015

8

(9th Cir. 2010) (upholding district court's decision to award nearly four years' front pay in a wrongful termination suit); *see also Glenn-Davis v. City of Oakland*, No. C 02-2257 SI, 2008 WL 410239, *4 (N.D. Cal. 2008) (finding three years of front pay "appropriate" in a discrimination suit); *Ackerman v. Western Elec. Co., Inc.*, 643 F. Supp. 836, 856 (N.D. Cal. 1986) (same). Thus, Plaintiff's allegations of lost wages alone exceed $816,000.

29.     **Punitive Damages**. In her Complaint, Plaintiff seeks to recover "exemplary damages" under California Code of Civile Procedure section 3294. (**Exhibit 1**—Compl. 16:20-21.)

30.     The Court must consider Plaintiff's request for punitive damages in determining the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F. 3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action.").

31.     Juries have awarded punitive damages ranging from $50,000 to $1,000,000 in discrimination, retaliation, and/or wrongful termination cases. *See*, *e.g.*, *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009) (holding that a punitive damage award of $1.9 million equal to the compensatory damage award was appropriate in retaliation case); *Burton v. Pulmocare Respiratory Services*, 2016 WL 6962191 (San Bernardino Sup. Ct.) (plaintiff's verdict in pregnancy discrimination case, with jury award of $275,000 in pain and suffering, $58,532 in past wages, $13,203 in future wages, and $50,000 in punitive damages); *Olivas-Dean v. Amer. Meizhou Dongpo Grp. Inc., et al.*, No. BC581538, 2017 WL 3531353 (Los Angeles Sup. Ct.) (plaintiff verdict totaling $350,000 based wrongful termination claim, of which $250,000 was for punitive damages). These awards demonstrate that, for diversity purposes, a *very conservative* alleged value of Plaintiff's alleged punitive damages equate to no less than $50,000.

32.     **Emotional Distress Damages**. In her Complaint, Plaintiff seeks to recover damages for "emotional distress." (**Exhibit 1**—Compl. ¶ 46; 16:16-17.)

DEFENDANT'S NOTICE OF REMOVAL

311475777v.2

1    33.    In *Thompson v. Big Lots Stores, Inc.*, No. 1:16-cv-01464-LJO-JLT, 2017
2  WL 590261, *4 (E.D. Cal. 2017), the court made clear that "[i]n determining the amount
3  in controversy, a court may assess likely emotional distress damages by reference to
4  damages awards in similar discrimination cases." Applying that rule, the *Thompson* court
5  found the defendant met its burden of showing that damages awards for emotional
6  distress in analogous cases are often substantial, where the defendant pointed to a jury
7  award of $122,000 in emotional distress damages to an employee who sued for
8  pregnancy discrimination and wrongful termination. *Id.*

9    34.    In fact, such damages may exceed $122,000. A review of jury verdicts in
10  California demonstrates as much. *See*, *e.g.*, *Silverman v. Stuart F. Cooper Inc.*, No.
11  BC467464, 2013 WL 5820140 (Los Angeles Sup. Ct.) (jury awarded $157,001 for
12  emotional distress damages in discrimination case); *Vasquez v. Los Angeles Cnty. Metro.
13  Transp. Auth.*, No. BC484335, 2013 WL 7852947 (Los Angeles Sup. Ct.) (award of
14  $1,250,000 for pain and suffering to employee in discrimination action); *Aboulafia v.
15  GACN Inc.*, No. BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct.) (pain and
16  suffering award of $250,000, $250,000, $250,000, and $250,267 to four employees in
17  discrimination action); W*ard v. Cadbury Schweppes Bottling Grp*., No.
18  09CV03279(DMG), 2011 WL 7447633 (C.D. Cal) (jury award $5,600,000 in non-
19  economic damages in discrimination and retaliation case); *Welch v. Ivy Hill Corp*., No.
20  BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct.) (award of $1,270,000 in pain and
21  suffering to employee in a discrimination action); *Mathews v. Happy Valley Conference
22  Ctr.*, 43 Cal. App. 5th 236, 247 (Cal. Ct. App. 2019) (award of $275,000 in non-
23  economic damages for suit alleging retaliatory termination under several legal theories).
24  These awards demonstrate that, for diversity purposes, the alleged value of Plaintiff's
25  alleged emotional distress damages exceeds the $75,000 amount in controversy
26  requirement.

27    35.    **Attorney's Fees.** Plaintiff also seeks to recover attorney's fees. (**Exhibit
28  1**—Compl. ¶¶ 58, 67, 74; 17:4) Attorney's fees are properly considered in calculating the

DEFENDANT'S NOTICE OF REMOVAL

311475777v.2

amount-in-controversy for purposes of removal on grounds of diversity jurisdiction. *Galt*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). The amount of attorney's fees for purposes of amount in controversy calculations is the expected reasonable attorney's fees through trial. *Fritsch v. Swift Transp.*, 899 F. 3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

36.    Concorde anticipates that the Parties will propound written discovery, that depositions will be taken in this case, and that Concorde will file a Motion for Summary Judgment. (Rodine Dec. ¶ 6.) If Plaintiff prevails, she could be entitled to an award of attorneys' fees that alone are "more likely than not" to exceed $75,000, as is typical in employment cases alleging discrimination and wrongful termination. Indeed, Courts have awarded attorney's fees in excess of $75,000 in cases involving discrimination. *See*, *e.g.*, *Crawford v. DIRECTV, Inc.*, No. BC417507, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving attorney's fee award of $159,762.50 in alleged discrimination action); *Davis v. Robert Bosch Tool Corp.*, No. B185408, 2007 WL 2014301, *9 (Cal. Ct. App. 2d Dist. July 13, 2007) (individual plaintiff sought $1.6 million in fees); *Denenberg v. Cal. Dep't of Transp.*, No. GIC836582, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorney's fees award of $490,000 for claims including discrimination case).

37.    In sum, Plaintiff's aggregated recovery on her claims, including compensatory damages such as lost wages and emotional distress damages, attorney's fees, and punitive damages, easily satisfies the $75,000 jurisdictional threshold. While Concorde vehemently denies any liability as to Plaintiff's claims, it is "more likely than not" that the alleged amount in controversy in this action exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

38.    Because diversity of citizenship exists between Plaintiff and Concorde, and the matter in controversy between the Parties exceeds $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1), and removal is proper.

311475777v.2

## V. VENUE

39.     Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 84(c)(1), 1441, and 1446(a) because this action originally was brought in the Superior Court of the State of California, County of San Bernardino. (**Exhibit 1**—Compl.) Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI.    NOTICE OF REMOVAL TO PLAINTIFF AND THE SUPERIOR COURT

40.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of San Bernardino. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

41.     In compliance with 28 U.S.C. section 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in this action are attached as **Exhibit 1** and **Exhibit 2**. (Rodine Dec. ¶¶ 4-5.)

## VII.   PRAYER FOR REMOVAL

Wherefore, Concorde Career College prays that this civil action be removed from the Superior Court of the State of California, County of San Bernardino to the United States District Court for the Central District of California.

DATED:  June 7, 2024                    SEYFARTH SHAW LLP


By: */s/ Joshua A. Rodine*
Joshua A. Rodine
Barri Lyn Friedland
Attorneys for Defendant
CONCORDE CAREER COLLEGE

DEFENDANT'S NOTICE OF REMOVAL

311475777v.2

# EXHIBIT 1



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 29095673**
**Date Processed: 05/13/2024**

| | |
|---|---|
| **Primary Contact:** | Lisa Henak<br>Concorde Career Colleges, Inc.<br>6701 W 64th St<br>Ste 200<br>Overland Park, KS 66202-4175 |
| **Electronic copy provided to:** | Jeremiah Hatcher |

| | |
|---|---|
| **Entity:** | Concorde Career Colleges, Inc.<br>Entity ID Number  1560822 |
| **Entity Served:** | Concorde Career College |
| **Title of Action:** | Kimberly Bankston-Bradshaw, an individual vs. Concorde Career College |
| **Matter Name/ID:** | Kimberly Bankston-Bradshaw, an individual vs. Concorde Career College (15695004) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | San Bernardino County Superior Court, CA |
| **Case/Reference No:** | CIVSB2413668 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 05/10/2024 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Timothy D. McGonigle Professional Corporation<br>310-478-7110 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td></td><td><strong>FOR COURT USE ONLY</strong><br><em>(SOLO PARA USO DE LA CORTE)</em></td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CONCORDE CAREER COLLEGE; and DOES 1 through 20, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
KIMBERLY BANKSTON-BRADSHAW, an individual,

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

5/8/2024

By: Michelle Gomez-Casillas, DEPUTY

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER:<br>*(Número del Caso):* | |
|---|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Bernardino County Superior Court<br>247 West Third Street San Bernardino, CA 92415-0210 | | CIVSB2413668 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Timothy D. McGonigle, Esq., 1880 Century Park East, Suite 516, Los Angeles, CA 90067     310-478-7110

| DATE:<br>*(Fecha)* | 5/8/2024 | Clerk, by<br>*(Secretario)* | /s/ Michelle Gomez-Casillas | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☑ on behalf of *(specify)*: Concorde Career College
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☑ other *(specify)*: private for-profit educational institution
4. ☑ by personal delivery on *(date)*: MAY 1 0 2024

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]          [ Clear this form ]

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

4/19/2024 11:27 AM

By: Michelle Gomez-Casillas, DEPUTY

1   Timothy D. McGonigle, Esq. (State Bar No. 115979)
    **Timothy D. McGonigle Prof. Corp.**
2   1880 Century Park East, Suite 516
    Los Angeles, CA 90067
3   Telephone: (310) 478-7110
    Email: tim@mcgoniglelaw.net
4
    *Attorney for Plaintiff*
5   KIMBERLY BANKSTON-BRADSHAW

6

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF SAN BERNARDINO**

10  KIMBERLY BANKSTON-BRADSHAW, an          Case No.    CIVSB2413668
    individual,
11                                          **COMPLAINT FOR:**
                Plaintiff,
12                                          **(1) Gender and Racial Discrimination in**
                                            **Violation of Gov. Code § 12940;**
13              v.                          **(2) Failure to Prevent Discrimination and**
                                            **Retaliation in Violation of Gov. Code §**
14  CONCORDE CAREER COLLEGE; and            **12940(k);**
    DOES 1 through 20, inclusive,           **(3) Retaliation and Wrongful Termination**
15                                          **in Violation of Public Policy; and**
                Defendants.                 **(4) Violation of California Civil Code**
16                                          **Section 43**

17                                          **JURY TRIAL DEMANDED**

18

19  ///

20  ///

21      Plaintiff Kimberly Bankston-Bradshaw ("Plaintiff" or "Dr. Bankston-Bradshaw") alleges

22  against Defendant Concorde Career College and Does 1-20 (collectively, "Defendants") as

23  follows:

**THE PARTIES**

1. Plaintiff, Dr. Kimberly Bankston-Bradshaw ("Dr. Bradshaw") is a former employee of Defendant, Concorde Career College ("Concorde"), as alleged below.

2. Defendant Concorde is a private for-profit educational institution with locations across the country. Plaintiff was employed at the Concorde's San Bernardino, California location at 201 East Airport Drive, San Bernardino, California 92408.

3. On January 11, 2024, Plaintiff filed a complaint against Concorde with the California Equal Employment Opportunity Commission ("EEOC").

4. On January 19, 2024, Plaintiff received a "right to sue" letter from the EEOC. Attached hereto as **Exhibit "A"** is a true and correct copy of the EEOC letter.

5. Plaintiff is informed and believes and based thereupon alleges that at all relevant times, Defendants Does 1 through 20 were under the direct supervision, employ, and control of Concorde. In doing the acts alleged herein, Defendants Does 1 through 20 were acting within the course and scope of their employment and agency with Concorde.

6. Plaintiff is ignorant of the true names and capacities of those sued herein as Does 1 through 20, inclusive, and therefore sues by such fictitious names. Plaintiff will seek leave to amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named parties is responsible in some manner for the occurrences herein alleged, and that Plaintiff's losses and damages as herein alleged were proximately caused by the acts and conduct of such fictitiously named parties.

7. At all relevant times, each of the Defendants was the agent, servant, affiliate, and/or employee of each and every one of the remaining Defendants, and the acts of such

1    Defendants were within the course and scope of said agency, affiliation, and/or

2    employment.

3    8.  Defendants Concorde and Does 1 through 20 are collectively referred to herein as

4    "Defendants."

5                            **JURISDICTION AND VENUE**

6    9.  The Court has both subject matter and personal jurisdiction in this case pursuant to

7    California Code of Civil Procedure ("C.C.P.") section 410.10.

8    10. Pursuant to California Code of Civil Procedure § 395(a), venue is proper in the above-

9    entitled Court because Defendants do business in this County, work in this county and/or a

10   substantial part of the events or omissions giving rise to the claims occurred in this County.

11   11. The amount in controversy exceeds the sum of twenty-five thousand dollars ($25,000.00),

12   exclusive of interest and costs.

13                            **STATEMENT OF FACTS**

14   12. On or about September 24, 2020, Dr. Bradshaw began working for Concorde as an

15   Academic Dean.

16   13. On or about October of 2022, Dr. Bradshaw was promoted to Campus President at

17   Concorde.

18   14. Shortly after Dr. Bradshaw's promotion, she was called into a meeting with Concorde's

19   Senior Leadership Team regarding Concorde's desire to terminate an underperforming

20   associate, Suzie Knight ("Knight"), a white female, who reported directly to Dr. Bradshaw,

21   a Black female.

22   15. Concorde informed Dr. Bradshaw that Knight's work performance was not satisfactory and

23   tasked her with firing Knight.

16. Dr. Bradshaw did not feel comfortable terminating Knight's employment at that time and wanted to see if she could help Knight improve her job performance. Dr. Bradshaw informed Kevin Prehn ("Prehn"), Concorde's Senior Vice President of Operation of the same. Mr. Prehn was Dr. Bradshaw's direct supervisor and stated that Dr. Bradshaw could take some time to monitor Knight's performance, before making the final decision to terminate Knight's employment.

17. On or about January of 2023, Concorde again brought up issues regarding Knight's substandard job performance to Dr. Bradshaw. Dr. Bradshaw continued to monitor Knight's performance. Prehn informed Dr. Bradshaw that she did not need to help Knight improve her performance.

18. Dr. Bradshaw always made sure another person was present when she communicated with Knight.

19. Around June of 2023, Dr. Bradshaw received outstanding work performance reviews from Concorde. Dr. Bradshaw's review did make mention of Knight's substandard work performance.

20. In the time period thereafter, Knight's performance did not improve. Dr. Bradshaw informed Prehn that it was time to put Knight on a Performance Improvement Plan (PIP).

21. Dr. Bradshaw wrote up the PIP (with feedback from Prehn and Koula Foura ("Foura")), submitted it to Human Resources ("HR") for review and approval, and, after approval by HR, thereafter implemented the PIP.

22. Dr. Bradshaw and HR participated in weekly follow up meetings but there was no improvement with respect to Knight's performance. Therefore, Dr. Bradshaw gave a final summary, with the approval of HR, and recommended termination to Concorde's Vice

1    President of HR, Amanda Shevette ("Shevette").  Shevette reviewed, approved, and

2    finalized the termination decision.

3   23. On or about July 31, 2023, Knight was terminated by Dr. Bradshaw, at the direction of

4       Concorde. At the time of termination, Dr. Bradshaw was physically present in a conference

5       room with Knight and Kiersti Savidge ("Savidge"), an HR consultant, who was present by

6       phone.

7   24.    On or about August 9, 2023, Dr. Bradshaw received an email from Shevette stating that

8       she had received an email of concern with questions from Knight.

9   25.    More specifically, Knight sent an email to HR expressing that she felt discriminated

10      against by Dr. Bradshaw (on the basis of her race) in connection with her termination. Knight

11      also complained to Concorde that Dr. Bradshaw had a relative who also worked at Concorde

12      and contended that such an arrangement was against Concorde's policy. On information and

13      belief, Knight expressed her intention to bring a wrongful termination claim against Concorde

14      in connection with her termination.

15   26.    Shevette, HR at Concorde, immediately claimed that they were not aware that Dr.

16      Bradshaw's daughter, Ember Tate ("Tate"), worked at Concorde "because they had different

17      last names." On information and belief, at all times relevant hereto, Concorde was always

18      aware of Tate's employment by Concorde and familial relationship to Dr. Bradshaw. More

19      specifically, Michelle Bausley ("Bausley"), an individual responsible for HR duties at

20      Concorde's campus was aware of the relations before hiring Tate. The hiring manager for the

21      position that conducted interviews was also aware.

22   27. On further information and belief, the complaints by Knight regarding Dr. Bradshaw's

23      relative working at Concorde were addressed to a purported Code of Business Conduct and

1   Ethics Policy (the "Conduct Policy") at Concorde which became effective on or about

2   February 1, 2021. The Policy also refers to a separate Conflict of Interest, Invention, and

3   Confidentiality Policy (the "Conflict Policy") which became effective on or about August

4   17, 2016. Notably, upon hire, Dr. Bradshaw was not provided with and/or did not sign the

5   Conflict Policy.

6   28. The Conduct Policy contains the following relevant provisions:

7   • **"I. COMMITMENT TO BUSINESS CONDUCT AND ETHICS**…All

8   associates, officers and directors of the College will: Conduct themselves in an

9   honest and ethical manner and act in the best interest of the College. A "conflict of

10   interest" occurs when a person's private interest interferes, or reasonably may be

11   perceived as interfering, in any way with the interest of the College, including its

12   affiliates. A conflict of interest can arise when an associate, officer or director takes

13   an action or has an interest that may make it difficult for him or her to perform his

14   or her work objectively and effectively. Conflicts of interest may also arise when an

15   associate, officer, or director (or his or her family members) receives improper

16   personal benefits as a result of the associate's, officer's, or director's position in the

17   College. Situations involving a conflict of interest may not always be obvious or

18   easy to resolve. Please refer to the Conflict of Interest, Invention, and

19   Confidentiality Policy for defining and reporting possible conflicts of interest,

20   OTM# 08-022….".

21   • **"II. SPECIFIC COMPLIANCE STANDARDS…B. Conflicts of**

22   **Interest**…Associates are required to avoid situations which give rise to an actual or

23   potential conflict of interest, or situations that may be perceived as a conflict of

24

interest. An actual or potential conflict of interest may occur when associates are in
a position to influence a decision that may result in a personal gain for that person,
or for a relative of that person, as a result of Concorde's business dealings. An
actual or potential or perceived conflict of interest also may occur when Concorde
associates or their relatives own, operate or have a significant interest in any
business which competes or does business with Concorde, or if Concorde associates
accept concurrent employment with an organization in competition with Concorde
or against the interest of Concorde's customers or students. Associates may not
work on personal outside interests or activities related to another job on Concorde's
time. Associates may not receive improper payments (bribes, kickbacks, or payoffs)
to obtain or maintain business. Associates are not authorized to make any offer,
payment promise or gift that is intended or appears to influence a business
relationship. For further details reference the Conflict of Interest, Invention and
Confidentiality Policy OTM# 08-022." Attached hereto as **Exhibit "B"** is a true and
correct copy of the Conduct Policy.

29. The Conflict Policy contains the following relevant provisions:

- "**PURPOSE**... An associate of Concorde Career Colleges, Inc. and its subsidiaries
  (the "Company") may not be involved in any conflict of interest situation and must
  disclose any activity, interest or circumstance which may be a conflict of
  interest...".

- "**DEFINITIONS**...A conflict of interest is....

  - A circumstance in which a relative (defined as a person connected with
    another by blood or affinity, including marriage) or someone with whom

1                the employee has a personal relationship is or becomes involved in a

2                business or activity, including employment, that may conflict with the

3                associate's duties or responsibilities or affect the associate's judgment in

4                making a decision affecting the Company or its affiliates.

- A circumstance whenever related associates are permitted to hold positions where one relative can influence the performance or the performance appraisal of the other, e.g.: supervising a relative in the same department; having access to confidential material that would benefit their relative; being assigned to a position which might jeopardize proper internal control procedures; or, in the case of the President and COO, Officers/Home Office Management or exempt personnel employing a relative anywhere in the Company. In the case of Campus Presidents, employing a relative on their campus or campus for which a President has responsibility.

- Any personal activity that would interfere with the proper performance of the associate's duties or affect the associate's capacity to perform his/her functions or result in conflicting loyalties including engaging in any improper activities." Attached hereto as **Exhibit "C"** is a true and correct copy of the Conflict Policy.

30. Neither the Conduct Policy, nor the Conflict Policy prohibits relatives of current Concorde employees from being hired. Further, given the definition of "conflict of interest" set forth in the Conduct Policy and the Conflict Policy, there was no conflict of interest.

31. As set forth herein above, at all times relevant hereto, Concorde was aware of the relationship between Dr. Bradshaw and Tate. No improprieties existed in connection with the simultaneous employment of Dr. Bradshaw and Tate.

32. Notably, other, white, employees of Concorde at the Grand Prairie, Garden Grove, as well as the home offices in Kansas, have relatives working at Concorde.

33. On or about August 11, 2023, Shevette scheduled a phone meeting with Dr. Bradshaw. Jennifer Rojas ("Rojas"), an HR Representative flew down to be physically present at the meeting and Shevette attended the meeting via phone. During the meeting, Shevette asked Dr. Bradshaw if she was related to any other Concorde employees. Dr. Bradshaw replied that she was. Dr. Bradshaw also advised and/or clarified that her daughter did not report to her, that Dr. Bradshaw had no payroll approval/authority for her daughter, and that Dr. Bradshaw was not involved in her daughter's interview, application, or review process.

34. Shevette accused Dr. Bradshaw of hiding information from Concorde.

35. At the conclusion of the meeting, Dr. Bradshaw was escorted out and told by Shevette that she was being put on administrative leave for two days, which turned into a week or more.

36. When Dr. Bradshaw inquired with Concorde regarding when she could return to work, Concorde informed her they were still investigating the complaints made by Knight and/or the purported violation by Dr. Bradshaw of Concorde's Conflict of Interest policy.

37. In connection with the investigation, Dr. Bradshaw was told that she allegedly had decision making abilities that could be tarnished by having her daughter work in the office which was not true.

38. On or about August 21, 2023, Concorde terminated Dr. Bradshaw's employment, effective immediately, for purported Code of Conduct violations.

39. Concorde contended that Dr. Bradshaw was being terminated for allegedly violating the
Conflict of Interest policy.  That was a pretext.  In fact, she was wrongfully terminated for a
discriminatory motive, and not because of any alleged violation of Concorde's policy, as
evidenced by the fact that multiple white employees worked at the same Concorde location
as their relatives.

40. Tate was also terminated on the same day for allegedly not putting Dr. Bradshaw's name on
her employment application.

41. A third employee, Concorde's Campus Administrator who does new hire onboarding for
the campus was likewise terminated.

42. This third employee (name currently unknown) was the employee that did the onboarding
of Tate which Concorde called into question and who is also a Black woman.

43. On information and belief, Dr. Bankston-Bradshaw was replaced by Concorde by a white
male. On further information and belief, a Hispanic male, who met all required experience
and education requirements was next in line for the Campus President position at Concorde.
However, a white male was hired instead, and the job description was downgraded to fit his
lack of education and background.

44. On information and belief, Dr. Bankston-Bradshaw was placed on administrative leave and
thereafter wrongfully terminated in retaliation for discriminatory motives, for failing to
terminate Knight when Concorde first directed her to, and in an attempt to scapegoat Dr.
Bradshaw for the subsequent complaints made by Knight (to avoid a lawsuit by Knight).

45. On further information and belief, the aforementioned conduct by Concorde amounted to
unlawful discrimination and wrongful termination due to Dr. Bradshaw's race (Black) and
gender (female).

46. As a direct result of Concorde's actions, Dr. Bradshaw has suffered damages, including, but not limited to, reputational damage, emotional distress, including but not limited to fear, humiliation, and mental, or emotional or physical pain and anguish that has been and/or will foreseeably be experienced by Dr. Bankston-Bradshaw, loss of wages and/or benefits, and other economic and non-economic damages according to proof.

## FIRST CAUSE OF ACTION

**(Gender and Racial Discrimination in Violation of Gov. Code § 12940(a) against All Defendants)**

47. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 43, as though fully set forth herein.

48. At all times relevant, Plaintiff was an employee protected by Government Code § 12940(a), which prohibits discrimination in employment on the basis of gender and/or race.

49. At all times relevant, Defendants were "employers" within the meaning of California Government Code § 12926, and as such, were prohibited from discriminating in regard to terms, conditions, or privileges of employment.

50. As set forth herein above, Plaintiff was a person in a protected category.

51. Prior to hire, after hire, and through Plaintiff's employment, Plaintiff put Defendants on notice of her race and family status and the status of the same.

52. Plaintiff was well-qualified for her position with Defendants.

53. Defendants discriminated against Plaintiff on the basis of her gender and her race.

54. The purported lack of disclosure about her daughter was a pretext so that other, less-qualified white males could be promoted.

55. More specifically, Plaintiff was subjected to differing terms of her employment as a result of her gender and race. Ultimately, Plaintiff was subjected to adverse employment actions and terminated in connection with the discrimination she was subjected to.

56. As a direct, foreseeable and proximate result of Defendants' behavior, Plaintiff has suffered, and continues to suffer, damages in an amount according to proof at trial.

57. Plaintiff is informed and believes, and thereon alleges, that Defendants committed the acts described above deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure her and that such improper motives amounted to malice and a conscious disregard of her rights as set forth in Government Code § 12940(a).  An award of punitive damages against Defendants is therefore warranted.

58. As a result of the discriminatory conduct of Defendants, as alleged herein, Plaintiff is entitled to costs of suit, including reasonable attorneys' fees, in an amount according to proof at trial.

59. Plaintiff further prays for a permanent injunction and declaratory relief preventing Defendants from committing similar violations of FEHA in the future and declaring Defendants' violation of FEHA In the instant matter.

60. Plaintiff was harmed by Defendant's actions.

**SECOND CAUSE OF ACTION**

**(Failure to Prevent Discrimination and Retaliation in Violation of Gov. Code § 12940(k)**

**Against All Defendants)**

61.   Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 57 as though fully set forth herein.

12
COMPLAINT

62.    At all times relevant, Plaintiff was an employee of Defendants and protected by

Government Code § 12940(k), which makes it unlawful to fail to take all reasonable steps

necessary to prevent discrimination or harassment from occurring.

63.    Defendants discriminated against Plaintiff by harassing and retaliating against her due to

her race and/or gender, subjecting her to illegitimate discipline, failing to support her in

connection with her job position, subjecting her to different employment responsibilities,

placing her on unrequested leave, and ultimately actually terminating her.

64.    Defendants were aware of these discriminatory actions and failed to take all reasonable

steps to prevent the discrimination. As set forth above, on many occasions, Plaintiff complained

about the Defendants' conduct and/or the conduct she was being subject to.

65.    As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiff has

suffered, and continues to suffer, damages in an amount according to proof at trial.

66.    Defendants, and each of them, intended to cause injury to Plaintiff or acted with willful

and conscious disregard of the rights of Plaintiff or others; subjected Plaintiff to cruel and

unusual hardship in conscious disregard of Plaintiff's rights; and/or intentionally

misrepresented, deceived, or concealed a material fact with intent to deprive Plaintiff of legal

rights or otherwise cause injury to Plaintiff. As such, Defendants acted with oppression, fraud,

or malice within the meaning of Civil Code § 3294(c), thereby entitling Plaintiff to punitive

damages in an amount sufficient to set an example of and punish each Defendant named herein.

67.    Plaintiff is further entitled to reasonable attorney's fees and costs of suit, in an amount

according to proof at trial.

## THIRD CAUSE OF ACTION

**(Retaliation and Wrongful Termination in Violation of Public Policy Against All Defendants)**

68. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 64, as though fully set forth herein.

69. At all times relevant, Plaintiff was an employee of Defendants and protected by fundamental and well-established policies that benefit the public at large.

70. At all times relevant, the following statute was in full force and effect and was binding on Defendants:

Cal. Gov. Code § 12940, et seq. embodies a fundamental state public policy and prohibits harassment, discrimination, retaliation, failure to prevent discrimination, and failure to engage in a timely, good faith interactive process based on a protected class, including disability and/or medical condition.

71. As discussed above, Defendant's violated the law and well-established public policy by discriminating against Plaintiff, retaliating against Plaintiff and ultimately terminating Plaintiff's employment based in substantial part on her gender and/or race.

72. As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiff has suffered, and continues to suffer, damages in an amount according to proof at trial.

73. Defendants, and each of them, intended to cause injury to Plaintiff or acted with willful and conscious disregard of the rights of Plaintiff or others; subjected Plaintiff to cruel and unusual hardship in conscious disregard of Plaintiff's rights; and/or intentionally misrepresented, deceived, or concealed a material fact with intent to deprive Plaintiff of legal rights or otherwise cause injury to Plaintiff. As such, Defendants acted with

1    oppression, fraud, or malice within the meaning of Civil Code § 3294(c), thereby entitling

2    Plaintiff to punitive damages in an amount sufficient to set an example of and punish each

3    Defendant named herein.

4    74. Plaintiff is further entitled to reasonable attorney's fees and costs of suit, in an amount

5    according to proof at trial.

6    <strong><u>FOURTH CAUSE OF ACTION</u></strong>

7    <strong>(Violation of California Civil Code Section 43 Against All Defendants)</strong>

8    75. Plaintiff hereby realleges and incorporates by reference the allegations contained in

9    paragraphs 1 through 71 as though fully set forth herein.

10   76. California Civil Code Section 43, provides that "[b]esides the personal rights mentioned or

11   recognized in the Government Code, every person has, subject to the qualifications and

12   restrictions provided by law, the right of protection from bodily restraint or harm, from

13   personal insult, from defamation, and from injury to his personal relations."

14   77. As alleged herein, and in violation of California Civil Code Section 43, Defendants failed to

15   provide a workplace free from discrimination and pretextual conduct by failing to act with

16   respect to Plaintiff's concerns.

17   78. Defendants' refusal to take corrective action and provide protection from this offensive

18   behavior violates the law because Concorde Career College employees and supervisory

19   employees, were acting during the course and scope of employment when they

20   discriminated against, harassed, and/or subject Plaintiff to inappropriate conduct.

21   79. Plaintiff is informed and believes, and thereon alleges, that Defendants requirement that

22   Plaintiff work in a workplace where accusations about nondisclosure was violative of

23   Section 43 of the California Civil Code.

80. By the aforesaid acts and omissions of Defendants, and each of them, Plaintiff has been
directly and legally caused to suffer actual damages including, but not limited to, loss of
earnings, reliance damages, costs of suit and other pecuniary loss in an amount not
presently ascertained, but to be proven at trial.

81. As a further direct and legal result of the acts and conduct of Defendants, and each of them,
as aforesaid, Plaintiff has been caused to and did suffer and continues to suffer severe
physical, emotional and mental distress, anguish, humiliation, shame, embarrassment,
fright, shock, pain, discomfort and anxiety. Plaintiff does not know at this time the exact
duration or permanence of said injuries, but is informed and believes, and thereon alleges,
that some if not all of the injuries are reasonably certain to be permanent in character.

82. As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiff was
injured as set forth above, and is entitled to damages.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. For actual damages, including loss of past and future earnings, in an amount
   according to proof at trial;

2. For general and special damages according to proof, including but not limited to
   damages for physical pain, mental suffering, and/or emotional distress;

3. For consequential and incidental damages and expenses in an amount according to
   proof at trial;

4. For exemplary damages in an amount according to proof as allowed under Civil Code
   § 3294;

5. For all unpaid wages and expenses according to proof at trial;

6. For restitution and disgorgement of all unpaid wages and injunctive relief according to proof at trial;

7. For costs incurred herein;

8. For reasonable attorneys' fees and costs according to proof at trial;

9. A temporary, preliminary, and permanent injunction enjoining Defendants' unfair and illegal practices as described above;

10. For statutory interest as provided by law;

11. For double damages pursuant to Section 972 of the California Labor Code, and,

12. For such other relief as the Court deems proper.

Dated: April 19, 2024                    Timothy D. McGonigle Professional Corporation

By:_____
        Timothy D. McGonigle

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: April 19, 2024                    Timothy D. McGonigle Professional Corporation

By:_____
        Timothy D. McGonigle

17
COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# Exhibit A

18
COMPLAINT



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**                                                            KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
www.calcivilrights.ca.gov | contact.center@dfeh.ca.gov

| | |
|---|---|
| EEOC Number: | 480-2023-05554 |
| Case Name: | Dr. Kimberly Bradshaw v. Concorde Career Colleges |
| Filing Date: | 01/19/2024 |

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the
California Civil Rights Department (CRD) by the U.S. Equal Employment Opportunity
Commission (EEOC). The complaint will be filed in accordance with California
Government Code section 12960. This notice constitutes service pursuant to
Government Code section 12962.

The EEOC is responsible for the processing of this complaint. Please contact EEOC
directly for any discussion of this complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your Right to Sue notice. **This Right to Sue Notice allows you to file
a private lawsuit in State court**. According to Government Code section 12965,
subdivision (c), you may bring a civil action under the provisions of the Fair Employment
and Housing Act against the person, employer, labor organization or employment
agency named in the above-referenced complaint. The lawsuit may be filed in a State of
California Superior Court. Government Code section 12965, subdivision (c), provides
that such a civil action must be brought within one year from the date of this notice.
Pursuant to Government Code section 12965, subdivision (e)(1), this one-year period
will be tolled during the pendency of the EEOC's investigation of your complaint. You
should consult an attorney to determine with accuracy the date by which a civil action
must be filed. This right to file a civil action may be waived in the event a settlement
agreement is signed.

Be advised, CRD does not retain case records beyond three years after a complaint is
filed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# Exhibit B

# CODE OF BUSINESS CONDUCT AND ETHICS



| | |
|---|---|
| Department: | Human Resources |
| Policy Number: | 08-110 |
| Effective: | 02/01/2021 |
| Replaces: | 80.C10 |

## POLICY

### I. COMMITMENT TO BUSINESS CONDUCT AND ETHICS

Concorde Career Colleges, Inc. ("Concorde") is committed to ensure that we, individually and as an organization perform and conduct our business with professional integrity and honesty. Concorde adheres to the NASFAA Code of Conduct.

As an associate of Concorde, you have certain responsibilities to the College, your fellow associates, and the students we serve. This Code summarizes the standards that must guide our actions. As a guiding principle at the College, we are committed to act in the highest ethical manner and respect the rights and dignity of others. The College will conduct its operations with honesty, fairness, integrity, and trustworthiness. This Code contains useful guidelines for daily business conduct which are intended to assist associates, officers, and directors of the College in making decisions on behalf of the College. No guidelines can be all inclusive, however, and responsibility for proper conduct rests with each associate, officer, and director. There is no substitute for personal integrity and good judgment. An associate, officer or director faced with a difficult decision should consider whether he or she would feel comfortable if the decision became public knowledge. If the answer is in the affirmative, the decision is probably correct.

While it is not possible to describe every situation which may violate this Code, the following guidelines are deemed to be particularly important and are examples of matters covered by this Code. The Code is intended to memorialize our ethical standards and values and to provide a method to communicate them to our associates, officers, and directors.

All associates, officers and directors of the College will:

- Conduct themselves in an honest and ethical manner and act in the best interest of the College. A "conflict of interest" occurs when a person's private interest interferes, or reasonably may be perceived as interfering, in any way with the interest of the College, including its affiliates. A conflict of interest can arise when an associate, officer or director takes an action or has an interest that may make it difficult for him or her to perform his or her work objectively and effectively. Conflicts of interest may also arise when an associate, officer, or director (or his or her family members) receives improper personal benefits as a result of the associate's, officer's, or director's position in the College. Situations involving a conflict of interest may not always be obvious or easy to resolve. Please refer to the Conflict of Interest, Invention, and Confidentiality Policy for defining and reporting possible conflicts of interest, OTM# 08-022.

- Exercise the basic virtues of respect and dignity in all work relationships. Recognize and avoid behaviors that others may find offensive, including the manner in which we speak and relate to one another and the materials we bring into the workplace, both printed and electronically.

- Respect the right and obligation of every associate, officer, and director to resolve concerns relating to ethics questions in the course of our duties without retribution and retaliation. Give all associates, officers, and directors the same opportunity to have their questions, issues and situations fairly considered while understanding that being treated fairly does not always mean being treated the same.

- Compete fairly, without collusion or collaboration (whether express or implied, formal or informal, oral or written) with competitors to divide markets or territories, set prices or terms or conditions of sale, restrict production, allocate customers or otherwise restrain competition or to boycott any individual or entity. Please refer to Concorde Career Colleges, Inc. Antitrust Policy HR OTM# 08-019, for guidelines related to the College commitment to 100% compliance with Antitrust Laws.

- Keep business records that are accurate, true, and complete and include all payments and receipts. The College shall provide full, fair, accurate, timely, and understandable disclosure in reports and documents that the College files with regulatory agencies and in other public filings and communications made by the College.

- Avoid taking for themselves business opportunities that arise through the use of corporate property, information, or position. Refrain from using corporate property, information or position for personal gain and competing in any way with the College. Competing with the College may involve engaging in the same line of business as the College or any situation where you take away from the College opportunities for sales or purchases of property, products, services, or interests.

- Endeavor to deal fairly with customers, suppliers, competitors, the public and one another at all times and in accordance with ethical business practices. Refrain from taking unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair dealing practice. Make no improper payment in any form directly or indirectly to or for anyone for the purpose of obtaining or retaining business or obtaining any other favorable action. Exercise good judgment in the exchange of business courtesies, meals, and entertainment by avoiding activities that could create even the appearance that decisions could be compromised. Offer full disclosure and withdraw from discussions and decisions when our business judgment appears to be in conflict with a personal interest.

- Comply with The Foreign Corrupt Practices Act, which prohibits the College and its associates and agents from offering or giving money or any other item of value to win or retain business or to influence any act or decision of any governmental official, political party, candidate for political office or official of a public international organization. This prohibition also extends to payments to a sales representative or agent if there is reason to believe that the payment will be used indirectly for a prohibited payment to foreign officials.

- Comply with College policy and all applicable laws and regulations applicable to the College's operations. These include laws covering bribery and kickbacks, copyrights, trademarks and trade secrets, information privacy, insider trading, illegal political contributions, antitrust prohibitions, foreign corrupt practices, offering or receiving gratuities, environmental hazards, employment discrimination or harassment, occupational health and safety, false or misleading financial information or misuse of corporate assets.

- Use reasonable efforts to protect the College's assets against loss, theft or other misuse and ensure their efficient use. Trust one another to use sound judgment in our use of the College's business and information systems. Respect the property of the College, including its intellectual property and confidential information. Maintain confidential proprietary information generated and gathered in our business in strict confidence, except when disclosure is authorized by the College or required by law.

- You are expected to understand and comply with all laws, rules and regulations that apply to your job position. If any doubt exists about whether a course of action is lawful, you should seek advice from your supervisor, the Campus President, Regional Vice President Operations, or the Vice President of Human Resources. This Code is not meant to be a complete statement of the College's corporate policies nor of the proper ethical course of conduct. Any waivers (including any implicit waivers) of the provisions in this Code for executive officers or directors may be made only by the Board. Amendments to this Code must be approved by the Board. All associates, officers and directors are expected to comply with all the provisions of this Code. The Code will be strictly enforced, and violations will be dealt with immediately, including subjecting persons to corrective and/or disciplinary action. We will not tolerate any kind of retaliation for reports or complaints regarding misconduct that were made in good faith.

- If you are unsure which specific rules, policies or regulations apply in a particular situation, or if you have concerns regarding compliance with policies, rules, or law, you should contact your manager, the Campus President, the Regional Vice President of Operations, or the Vice President of Human Resources

## II. SPECIFIC COMPLIANCE STANDARDS

Each Associate is expected to be familiar with, and follow, the rules, regulations, policies, and procedures that relate to their job. A few of the general rules and regulations are set forth below. Others are addressed in Concorde's policies and procedures posted on our intranet in the Operations Training Manual ("OTM"). Policies and procedures must be followed by all Concorde associates. Violations of these policies and procedures, or of any legal and regulatory requirements applicable to your job, may result in disciplinary action up to and including termination.

### A. Proprietary/Confidential Information

Concorde requires that all associates treat confidential information and College secrets with the utmost care. Violations of Concorde's policy and federal, state or local law can occur if: (1) Concorde's confidential or proprietary information is disclosed to third parties; or (2) confidential information about our customers, associates, students/prospective students, or others with which Concorde has a relationship are disclosed to third parties or to persons within Concorde who have no "need to know." If you are unsure whether information is confidential, do not disclose it either to third parties or to others associated with Concorde who have no need to know. *For further details, reference the Proprietary Information Policy, OTM# 08-008.*

### B. Conflicts of Interest

Associates are required to avoid situations which give rise to an actual or potential conflict of interest, or situations that may be perceived as a conflict of interest. An actual or potential conflict of interest may occur when associates are in a position to influence a decision that may result in a personal gain for that person, or for a relative of that person, as a result of Concorde's business dealings. An actual or potential or perceived conflict of interest also may occur when Concorde associates or their relatives own, operate or have a significant interest in any business which competes or does business with Concorde, or if Concorde associates accept concurrent employment with an organization in competition with Concorde or against the interest of Concorde's customers or students. Associates may not work on personal outside interests or activities related to another job on Concorde's time. Associates may not receive improper payments (bribes, kickbacks, or payoffs) to obtain or maintain business. Associates are not authorized to make any offer, payment promise or gift that is intended or appears to influence a business relationship. *For further details reference the Conflict of Interest, Invention and Confidentiality Policy OTM# 08-022.*

### C. Gifts

Concorde associates are not permitted to accept gifts and entertainment of any kind from vendors or lenders. Examples include but are not limited to; cookies, donuts, flowers, movie tickets, pens/pencils, or other desk items. Concorde associates are permitted to accept gifts and entertainment of nominal value not to exceed $10 from sources other than lenders and vendors. Concorde associates may accept meals from lenders and vendors while at pre-approved business functions such as National Association of Student Financial Aid Administrators (NASFAA) conventions or state association meetings as long as Concorde associates are not the only participants present and the other meeting attendees participate in the meal. Associates are prohibited from accepting any item or service that might reasonably be deemed to affect their business judgment. Campus and Home Office officials are permitted to accept paid luncheons or dinners if they are reasonable and consistent with accepted business practice and are not from lenders.

### D. Copyrights and Trademarks

Copyright laws can be violated by copying course materials or other published documents outside of the standard approved curriculum. Copyright laws can also be violated by installing computer software on multiple systems or installing unlicensed software. Software must be approved by the Director of Information Technology. It is a violation of the trademark laws to use a trademark or service mark that is not owned by Concorde in a manner likely to cause confusion. To avoid violations, it is important to notify the President of Concorde before adopting new slogans, names, or symbols. *For further details, reference the E-mail, The Internet and Other Electronic and Telephonic Communications Policy, OTM# 08-011.*

### E. Employment Practices

#### 1. Discrimination or Harassment

Concorde associates are responsible for compliance with the equal employment opportunity laws. It is unlawful and against policy to: (a) fail to hire or promote, or unjustifiably treat differently, an individual because of that individual's race, color, sex, national origin, religion, age, veteran status or disability status; (b) fail to cooperate in a truthful and forthcoming manner in connection with the investigation of any complaints which arise regarding an individual's employment with Concorde; or (c) retaliate in any manner against any individual who makes a complaint concerning equal employment opportunity. Concorde will not tolerate harassment of our associates or students/prospective students by anyone,

including any manager, co-worker, or third party. Harassment consists of unwelcome conduct, whether verbal, physical or visual, that is based on a person's race, color, national origin, religion, age, sex, veteran status, or disability. *For further details, reference the No Discrimination or Harassment Policy, OTM# 08-014.*

**2. Substance Use, Possession and Abuse**

Illegal drug use, being under the influence of or in possession of illegal drugs or alcohol during working hours is against Concorde policy. This includes drinking outside of the office during work hours. Excessive drinking outside of work hours or use of illegal drugs that impairs an associate's ability to perform their duties may be considered cause for termination. *For further details, reference the Anti-Drug and Alcohol Abuse Policy, OTM# 08-003.*

## F. Environmental

Associates shall use appropriate procedures and equipment in storing, using, and disposing of materials, such as needles, syringes, medical supplies, petrochemicals, refrigerants, and cleaners that may have an adverse environmental or health impact if not properly handled.

## G. Financial Reporting

Concorde's books and records must accurately reflect all measurable transactions affecting the College. Associates shall not make false or artificial entries in Concorde's books and records for any reason. Failure to accurately report financial information or other information that materially impacts financial statements is a violation of our policy. Concorde has a responsibility to communicate effectively, efficiently, and accurately with its owners and other constituencies so that they have an accurate understanding of Concorde's financial condition and results of operations. Concorde is committed to full, fair, accurate, timely and understandable disclosure in its periodic reports filed with owners, lenders, and regulatory agencies. Concorde's books, records, invoices, accounts, and financial statements must be maintained in reasonable detail, must appropriately reflect Concorde's transactions, and must conform both to applicable legal requirements and to Concorde's system of internal controls.

## H. Involvement with Governmental Entities and the Political Process

It is a violation of Concorde policy to: (1) bribe a public official or receive a bribe from a public official; (2) intentionally submit incorrect, misleading or fraudulent information, in written or oral form, to a public official or a government agency; or (3) engage in activities designed to influence the legislative process, or to influence official action of public officials, or government associates or representatives, unless done in accordance with applicable laws governing lobbying. When dealing with public officials and government agencies, you are expected to: (1) act in an honest and ethical manner; and (2) not use your position or association with Concorde to gain any unfair favor, advantage or benefit for either Concorde or yourself personally.

## I. Protection and Proper Use of College Assets

Associates must protect and properly use the College's assets. Associates are required to protect the College's assets from loss, damage, misuse, theft, or sabotage. It is against policy to convert an opportunity available to Concorde for personal use or use by another party. It is against policy to use the College phone to make personal long-distance phone calls or to use Concorde assets on another job. Misappropriation, mismanagement, or theft of money or other assets from the College are prohibited. *For further details, reference the E-mail, The Internet and Other Electronic and Telephonic Communications Policy, OTM# 08-011.*

## J. Safety

It is against policy to: (1) violate federal, state, or local safety regulations; (2) fail to abide by safe working rules and policies; or (3) fail to report unsafe acts or conditions. It is a violation of policy to be in possession of firearms, knives, or weapons of any type on College premises. *For further details, reference the Safety Policy, OTM# 08-013 and Workplace Violence Policy OTM# 08-018.*

## K. Sales and Marketing

Associates shall not engage in illegal or unethical conduct to make a sale or otherwise do business. All information provided about Concorde to third parties, including students/prospective students and customers, must be clear, accurate and truthful. Dishonest and unethical conduct, including untrue statements about our competitors or their programs, is inappropriate and a violation of our policies.

### L. Student/Prospective Student Relations

Associates shall treat all Concorde students and prospective students with respect.  Associates are prohibited from being involved personally with a student beyond the boundaries of a normal, respectful educator-student relationship.  *For further details, reference the Fraternization with Students Policy, OTM# 08-002.*

### M. Other

The following are also violations of Concorde policy and will result in corrective action up to and including termination of employment: (1) to falsify any College records or to deliberately alter records to distort factual conditions; (2) to have knowledge of an infraction of Concorde policy and not report the violation to the appropriate manager; (3) to have a conviction of a job related crime, that adversely affects the security, operation or reputation of the College; (4) sleeping during work hours; (5) walking off the job; (6) leaving a classroom unattended; (7) engaging in activities that damage the reputation of Concorde, its students/prospective students or associates; and (8) any other conduct that in the opinion of the College fails to promote the best interests of the College or the students/prospective students we serve.

### N. Ethics Reporting

<u>Financial Reporting Issues</u>

If concerns arise regarding financial reporting issues, those concerns may be directed to the President, the Chief Financial Officer, Vice President of Human Resources or the Audit Committee of the Company's Board of Directors by mailing an anonymous letter to Concorde Career Colleges, Inc., 5800 Foxridge Drive, Suite 500, Mission, KS 66202.

<u>Financial Aid Administration Compliance</u>

If you have concerns regarding the administration of Federal Student Aid Programs, possible violations of institutional or programmatic accreditation standards; or violations of state regulatory requirements you can report those concerns to Concorde's Compliance Department directly by contacting the Vice President of Regulatory Compliance and Quality Assurance or the Audit Committee of the Company's Board of Directors.

### O. Anonymous Reporting

Associates may choose to report violations anonymously via a confidential reporting line.  This anonymous and confidential reporting line run by Lighthouse Services is not affiliated with Concorde.  It is accessible 24 hours a day, seven days per week.  Your confidential report will instantly be forwarded to the individuals our organization has deemed appropriate to review and respond to your concerns.  Our organization is using this system to allow you to submit concerns and complaints regarding workplace financial concerns such as accounting discrepancies, fraud, accounting misrepresentations, auditing matters, accounting omissions, other financially related concerns or conduct or policy violations that you are not comfortable raising via our current Associate Resolution Procedures.

Anonymous reporting can be completed:

- Toll-Free Telephone--855-400-6004 (English speaking USA) or 800-216-1288 (Spanish speaking North America)
- Website--http://www.lighthouse-services.com/concorde
- E-mail--reports@lighthouse-services.com (must include company name with report)
- Fax: 215-689-3885

ee_48596179e66896098_2693478

*[signature]*

03/22/2022

_____
Signature

_____
Date



# Exhibit C

20
COMPLAINT

# CONFLICT OF INTEREST, INVENTION, AND CONFIDENTIALITY POLICY



| | |
|---|---|
| Department: | Human Resources |
| Policy Number: | 08-022 |
| Effective: | 08/17/2016 |
| Replaces: | 80.C22 |

## PURPOSE

An associate of Concorde Career Colleges, Inc. and its subsidiaries (the "**Company**") may not be involved in any conflict of interest situation and must disclose any activity, interest or circumstance which may be a conflict of interest. Inventions and ideas created by associates during their employment with the Company are the property of the Company. Business and technical information relating to the Company or its affiliates also is the property of the Company and must be held in strict confidence by associates.

## POLICY

Associates may not be involved in any conflict of interest situation as defined below without the written consent of the President and COO. ANY ACTIVITY OR INTEREST WHICH IS POTENTIALLY OR POSSIBLY OR MAY BE PERCEIVED A CONFLICT MUST BE DISCLOSED AS IF IT WERE A CONFLICT. Each situation will then be reviewed on a case-by-case basis as provided herein.

## DEFINITIONS

A conflict of interest is:

- Any involvement in any outside activity, business or employment which may conceivably conflict with the associate's duties or responsibilities or which is not compatible with the best interests of the Company. This includes an associate's involvement, whether for remuneration or not, in any entity that is a present or prospective competitor, customer or supplier of the Company or its affiliates.

- A circumstance in which a relative (defined as a person connected with another by blood or affinity, including marriage) or someone with whom the employee has a personal relationship is or becomes involved in a business or activity, including employment, that may conflict with the associate's duties or responsibilities or affect the associate's judgment in making a decision affecting the Company or its affiliates.

- A circumstance whenever related associates are permitted to hold positions where one relative can influence the performance or the performance appraisal of the other, e.g.: supervising a relative in the same department; having access to confidential material that would benefit their relative; being assigned to a position which might jeopardize proper internal control procedures; or, in the case of the President and COO, Officers/Home Office Management or exempt personnel employing a relative anywhere in the Company. In the case of Campus Presidents, employing a relative on their campus or campus for which a President has responsibility.

- Any personal activity that would interfere with the proper performance of the associate's duties or affect the associate's capacity to perform his/her functions or result in conflicting loyalties including engaging in any improper activities.

## EXCEPTION

An associate may hold investments in publicly owned companies, including banks and trust companies, whose securities are listed on national securities exchanges or are otherwise generally traded and available in the open market. However, if any of these companies is a customer, supplier or competitor of the Company or its affiliates, neither the associate nor his/her immediate family or close associates may hold more than one percent (1%) of the outstanding stock of that company. Any managerial associate (and any associate who has the authority to bind the Company) shall disclose any holdings of stock in or other business interests with its customers, suppliers or competitors.

Adjunct Faculty teaching General Education courses are exempt from compliance to the Conflict of Interest Policy only as it pertains to teaching at more than one Educational facility.

## INVENTIONS/PRODUCT CREATION

Should a Company associate invent or contribute toward the invention of a machine, product, method of manufacture or other designs, ideas, or make other discoveries or improvements which relate to the business of the Company, including preparation of computer software, and writing of curriculum either during or outside normal business hours, the associate will be required to make a written disclosure and to assign the invention to the Company. Pursuant to the associate's request, the Company will make an evaluation of the invention and at the Company's sole discretion may reassign the invention to the associate.

## CONFIDENTIALITY

Business and technical information that is not generally available and that belongs to, is developed by, is licensed to or is in the possession of the Company or its affiliates is to be retained in confidence. Each associate must keep such information confidential during employment and after termination. Any questions about an associate's obligation of confidentiality or what constitutes "Confidential Information and Trade Secrets" as defined in the Policy and Agreement should be directed to the President and COO or Vice President of Human Resources.

## PROCEDURES

Each associate is required to execute and sign this Conflict of Interest, Invention and Confidentiality Agreement. This Agreement requires the associate to disclose all existing, potential and possible conflicts of interest, disclose and assign inventions, as well as agree to hold business and technical information confidential. If there is doubt as to whether an interest or activity would be a conflict of interest, it should be disclosed as if it were unquestionably a conflict. If no such interests or activities exist, the associate should write the word "NONE" in the space provided.

Furthermore, the managerial associate (and any associate who has the authority to bind the Company) must state affirmatively or negatively whether he or she does or does not own any stock in or has a business relationship with any of its customers, suppliers or competitors.

Any disclosure of a potential or possible conflict shall be considered on a case-by-case basis to determine whether such activity is a conflict and whether some accommodation or remedy, including in certain circumstances, a change in employment status is appropriate. Such situations must be reviewed with the Vice President of Human Resources of Concorde Career Colleges, Inc. Each associate must complete and sign the Invention, Conflict of Interest and Confidentiality Agreement at the time of his/her hire. Thereafter, each salaried associate and each non-exempt associate with access to confidential information or trade secrets, i.e. part-time associates, shall complete and sign a new Agreement at the time of his/her next performance review.

The original, signed Conflict of Interest, Invention and Confidentiality Agreement shall be kept in the associate's personnel file with a copy to the associate.

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Timothy D. McGonigle, Esq. (State Bar No. 115979)<br>1880 Century Park East, Suite 516, Los Angeles, CA 90067<br><br>TELEPHONE NO.: 310-478-7100          FAX NO.: 888-266-9410<br>EMAIL ADDRESS: tim@mcgoniglelaw.net<br>ATTORNEY FOR *(Name):* Plaintiff Kimberly Bankston-Bradshaw | *FOR COURT USE ONLY*<br><br>ELECTRONICALLY FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO DISTRICT<br><br>4/19/2024 11:27 AM<br><br>By: Michelle Gomez-Casillas, DEPUTY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Bernardino
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS: 247 West Third Street
CITY AND ZIP CODE: San Bernardino, 92415
BRANCH NAME: San Bernardino District - Civil Division

**CASE NAME:** Kimberly Bankston-Bradshaw v. Concorde Career College

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited     [ ] Limited<br>(Amount          (Amount<br>demanded        demanded is<br>exceeds $35,000)  $35,000 or less) | [ ] Counter     [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CIVSB2413668 |
| | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[x] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 4
5. This case [ ] is   [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 18, 2024

Timothy D. McGonigle, Esq.
(TYPE OR PRINT NAME)                                        ▶                    *Tim McGonigle*
                                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
    Auto (22)–Personal Injury/Property
        Damage/Wrongful Death
    Uninsured Motorist (46) *(if the
        case involves an uninsured
        motorist claim subject to
        arbitration, check this item
        instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
    Asbestos (04)
        Asbestos Property Damage
        Asbestos Personal Injury/
            Wrongful Death
    Product Liability *(not asbestos or
        toxic/environmental)* (24)
    Medical Malpractice (45)
        Medical Malpractice–
            Physicians & Surgeons
        Other Professional Health Care
            Malpractice
    Other PI/PD/WD (23)
        Premises Liability (e.g., slip
            and fall)
        Intentional Bodily Injury/PD/WD
            (e.g., assault, vandalism)
        Intentional Infliction of
            Emotional Distress
        Negligent Infliction of
            Emotional Distress
        Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
    Business Tort/Unfair Business
        Practice (07)
    Civil Rights (e.g., discrimination,
        false arrest) *(not civil
        harassment)* (08)
    Defamation (e.g., slander, libel) (13)
    Fraud (16)
    Intellectual Property (19)
    Professional Negligence (25)
        Legal Malpractice
        Other Professional Malpractice
            *(not medical or legal)*
    Other Non-PI/PD/WD Tort (35)
**Employment**
    Wrongful Termination (36)
    Other Employment (15)

**Contract**
    Breach of Contract/Warranty (06)
        Breach of Rental/Lease
            Contract *(not unlawful detainer
                or wrongful eviction)*
        Contract/Warranty Breach–Seller
            Plaintiff *(not fraud or negligence)*
        Negligent Breach of Contract/
            Warranty
        Other Breach of Contract/Warranty
    Collections (e.g., money owed, open
        book accounts) (09)
        Collection Case–Seller Plaintiff
        Other Promissory Note/Collections Case
    Insurance Coverage *(not provisionally
        complex)* (18)
        Auto Subrogation
        Other Coverage
    Other Contract (37)
        Contractual Fraud
        Other Contract Dispute
**Real Property**
    Eminent Domain/Inverse
        Condemnation (14)
    Wrongful Eviction (33)
    Other Real Property (e.g., quiet title) (26)
        Writ of Possession of Real Property
        Mortgage Foreclosure
        Quiet Title
        Other Real Property *(not eminent
            domain, landlord/tenant, or
            foreclosure)*
**Unlawful Detainer**
    Commercial (31)
    Residential (32)
    Drugs (38) *(if the case involves illegal
        drugs, check this item; otherwise,
        report as Commercial or Residential)*
**Judicial Review**
    Asset Forfeiture (05)
    Petition Re: Arbitration Award (11)
    Writ of Mandate (02)
        Writ–Administrative Mandamus
        Writ–Mandamus on Limited Court
            Case Matter
        Writ–Other Limited Court Case Review
    Other Judicial Review (39)
        Review of Health Officer Order
        Notice of Appeal–Labor Commissioner
            Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
    Antitrust/Trade Regulation (03)
    Construction Defect (10)
    Claims Involving Mass Tort (40)
    Securities Litigation (28)
    Environmental/Toxic Tort (30)
    Insurance Coverage Claims
        *(arising from provisionally complex
        case type listed above)* (41)
**Enforcement of Judgment**
    Enforcement of Judgment (20)
        Abstract of Judgment (Out of County)
        Confession of Judgment *(non-domestic
            relations)*
        Sister State Judgment
        Administrative Agency Award
            *(not unpaid taxes)*
        Petition/Certification of Entry of
            Judgment on Unpaid Taxes
        Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
    RICO (27)
    Other Complaint *(not specified above)* (42)
        Declaratory Relief Only
        Injunctive Relief Only *(non-
            harassment)*
        Mechanics Lien
        Other Commercial Complaint
            Case *(non-tort/non-complex)*
        Other Civil Complaint
            *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
    Partnership and Corporate
        Governance (21)
    Other Petition *(not specified above)* (43)
        Civil Harassment
        Workplace Violence
        Elder/Dependent Adult Abuse
        Election Contest
        Petition for Name Change
        Petition for Relief From Late Claim
        Other Civil Petition

CM-010 [Rev. January 1, 2024]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

For your protection and privacy, please press the Clear
This Form button after you have printed the form.     [ Print this form ]    [ Save this form ]    [ Clear this form ]

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

Kimberly Bankston-Bradshaw

Case No.: _CIVSB2413668_

vs.

**CERTIFICATE OF ASSIGNMENT**

Concorde Career College

---

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground is the residence of a party, name and residence shall be stated.

---

The undersigned declares that the above-entitled matter is filed for proceedings in the
_San Bernardino_____ District of the Superior Court under Rule131 and General Order of this court for the checked reason:

☑ General            ☐ Collection
   **Nature of Action**      **Ground**

| | | |
|---|---|---|
| ☐ | 1. Adoption | Petitioner resides within the district |
| ☐ | 2. Conservator | Petitioner or conservatee resides within the district. |
| ☐ | 3. Contract | Performance in the district is expressly provided for. |
| ☐ | 4. Equity | The cause of action arose within the district. |
| ☐ | 5. Eminent Domain | The property is located within the district. |
| ☐ | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 9. Mandate | The defendant functions wholly within the district. |
| ☐ | 10. Name Change | The petitioner resides within the district. |
| ☐ | 11. Personal Injury | The injury occurred within the district. |
| ☐ | 12. Personal Property | The property is located within the district. |
| ☐ | 13. Probate | Decedent resided or resides within or had property within the district. |
| ☐ | 14. Prohibition | The defendant functions wholly within the district. |
| ☐ | 15. Review | The defendant functions wholly within the district. |
| ☐ | 16. Title to Real Property | The property is located within the district. |
| ☐ | 17. Transferred Action | The lower court is located within the district. |
| ☐ | 18. Unlawful Detainer | The property is located within the district. |
| ☐ | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☒ | 20. Other _Employment_ | The discrimination occurred within the district. |
| | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designed district is:

| | |
|---|---|
| Concorde Career College | 201 East Airport Drive |
| NAME -- INDICATE TITLE OR OTHER QUALIFYING FACTOR | ADDRESS |
| San Bernardino | CA                92408 |
| CITY | STATE              ZIP CODE |

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on _April 18, 2024_____ at _Los Angeles_____,
California.

_Tim McBride_
_Signature of Attorney/Party_

Form # 13-16503-360
Mandatory Use

CERTIFICATE OF ASSIGNMENT

Rev. June 2019



## Superior Court of California-County of San Bernardino

# ALTERNATIVE DISPUTE RESOLUTION

### What is Alternative Dispute Resolution?
There are different processes available to settle lawsuits that do not require a trial. In Alternative Dispute Resolutions (ADR) a trained, impartial person decides disputes or helps the parties reach resolutions of their disputes for themselves. These persons are *neutrals*, who are normally chosen by the disputing parties or the court.

### Advantages of ADR
- Often faster than going to trial.
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing the parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to a remedy.
- ADR can be used, even after a lawsuit, if the result is appealed.

### Disadvantages of ADR - ADR may not be suitable for every dispute.
- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error if by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

### The Most Common Types of ADR: Mediation and Arbitration

#### Mediation

In mediation, the mediator (*a neutral*) assists the parties in reaching a mutually acceptable resolution of their dispute.
- Unlike lawsuits or some other types of ADR, the parties, rather the mediator   decide how the dispute is to be resolved.
- ADR is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other.
- ADR can be particularly effective when parties have a continuing relationship, such as neighbors or businesses.
- ADR can be also very effective where personal feelings are getting in the way of a resolution.

#### Arbitration

In arbitration, the arbitrator (*a neutral*) reviews evidence, hears arguments, and makes a decision (*award*) to resolve the dispute. This is very different from mediation whereby the mediator helps the parties reach their own resolution. Arbitration may be more informal, quicker, and less expensive than a trial.

There are two types of arbitration in California:

- **Private arbitration** by agreement of the parties involved in the dispute. This type takes place outside of the court and normally is binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an opportunity to appeal the decision.
- **Judicial arbitration** ordered by the court. The arbitrator's decision is not binding unless the parties agree to be bound. A party who does not like the award may file a request for trial with the court within a specified time. However, if that party does not receive a more favorable award at trial, the party may have to pay a penalty.

## More Information

There are several other types of ADR. Some of these include conciliation, settlement conference, fact finding, mini-trial, Victim Offender Reconciliation Program, and summary trial jury. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type of ADR that is most likely to resolve your particular dispute.

The selection of a neutral is also an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals.

Agreements reached through ADR normally are put into writing and, if the parties wish, may become binding contracts that can be enforced by the court.

ADR can be used to resolve disputes instead of filing a lawsuit. Even after a lawsuit has been filed, the court can refer the dispute to a neutral. ADR has also been used to resolve disputes even after trial, when the result is appealed.

You may wish to seek the advice of an attorney as to your legal rights and matters relating to the dispute before pursuing ADR.

**To locate a dispute resolution program or neutral in your community:**

- **Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;**

- **Contact the local bar association, or;**

- **Look in a phone directory under mediation or arbitration services.**

**The following alternate dispute resolution service providers are under contract with the County of San Bernardino to provide services for the listed types of matters under referral by the Court at no or low cost. The contractors may also provide additional mediation services outside of their contracts with the County.**

*Civil, family law (except custody and support)*
*Landlord-tenant, unlawful detainers, small claims:*
**Program Director: Lynne Anderson, Executive Director**
**City Center Building**
**Inland Fair Housing & Mediation Board**
**10681 Foothill Boulevard, Suite 101**
**Rancho Cucamonga, CA  91730**
**909-984-2254 or 800-321-0911**
**Fax: 909-460-0274**
*www.inmedbd.com*

**\*\***

# EXHIBIT 2

1  SEYFARTH SHAW LLP
   Joshua A. Rodine (SBN 237774)
2  jrodine@seyfarth.com
   Barri Lyn Friedland (185148)
3  bfriedland@seyfarth.com
   2029 Century Park East, Suite 3500
4  Los Angeles, California 90067-3021
   Telephone:    (310) 277-7200
5  Facsimile:    (310) 201-5219

6  Attorneys for Defendant
   CONCORDE CAREER COLLEGES, INC. (erroneously
7  named "Concorde Career College")

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF SAN BERNARDINO

12

13  KIMBERLY BANKSTON-BRADSHAW,          Case No. CIVSB2413668

14              Plaintiff,               **DEFENDANT'S ANSWER TO
                                         PLAINTIFF'S COMPLAINT**
15         v.
                                         Complaint Filed:    April 19, 2024
16  CONCORDE CAREER COLLEGE; and DOES 1  Complaint Served: May 10, 2024
    through 20, inclusive,               Trial Date:
17
                Defendants.
18

19

20         Defendant Concorde Career College ("Concorde" or "Defendant"), by and through its attorneys,

21  Seyfarth Shaw, LLP, hereby answers Plaintiff's unverified Complaint as follows:

22                            **GENERAL DENIAL**

23         Pursuant to the provisions of Section 431.30 of the California Code of Civil Procedure,

24  Defendant denies, generally and specifically, each and every allegation, statement, and matter and each

25  purported cause of action contained in Plaintiff's unverified Complaint, and without limiting the

26  generality of the foregoing, denies generally and specifically that Plaintiff has been damaged in any way

27  by reason of any act or omission of Defendant.

28

---

## SEPARATE DEFENSES

In further answer to Plaintiff's Complaint, Defendant asserts the following separate defenses without assuming any burden of production or proof that it would not otherwise have.

### FIRST DEFENSE

### (Arbitration)

1.     By virtue of the fact that Plaintiff entered into an enforceable agreement to arbitrate that encompasses all claims alleged in the Complaint, her claims are barred by her contractual agreement to arbitrate.

### SECOND DEFENSE

### (Failure to State a Cause of Action)

2.     Neither the Complaint as a whole, nor any purported cause of action alleged therein, states facts sufficient to constitute a cause of action or claim for relief against Defendant.

### THIRD DEFENSE

### (Statute of Limitations)

3.     Plaintiff's Complaint, and each and every cause of action purported to be alleged therein, is barred to the extent that any are brought outside the applicable limitations periods. Cal. Code Civ. Proc. §§ 338(a) and 343; Cal. Gov't Code §§ 12960, 12965.

### FOURTH DEFENSE

### (Estoppel)

4.     Plaintiff's Complaint is barred, in whole or in part, by the doctrine of estoppel.

### FIFTH DEFENSE

### (Laches)

5.     Plaintiff's Complaint is barred, in whole or in part, by the doctrine of laches.

### SIXTH DEFENSE

### (Unclean Hands)

6.     Plaintiff's Complaint is barred, in whole or in part, by the doctrine of unclean hands.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

311445408v.1

### SEVENTH DEFENSE

### (Waiver)

7.     Plaintiff's Complaint is barred, in whole or in part, by the doctrine of waiver.

### EIGHTH DEFENSE

### (Exhaustion of Administrative Remedies)

8.     To the extent that Plaintiff makes allegations or claims which were not included in a timely complaint with the California Civil Rights department, this Court lacks jurisdiction with respect to any such allegations or claims.

### NINTH DEFENSE

### (Legitimate Business Decisions)

9.     Plaintiff may not obtain the relief requested in his Complaint because any employment action taken towards Plaintiff was based on legitimate non-discriminatory and non-retaliatory factors.

### TENTH DEFENSE

### (Mixed Motive)

10.     Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred because assuming *arguendo* that discriminatory and/or retaliatory reasons had been a motivating factor in any decisions toward Plaintiff, which Defendant expressly denies, Defendant would have made the same decisions and taken the same actions toward Plaintiff in any case for legitimate, non-discriminatory and or non-retaliatory reasons.

### ELEVENTH DEFENSE

### (Failure to Take Advantage of Safeguards)

11.     Defendant exercised reasonable care to avoid and eliminate discrimination and/or retaliation, and Plaintiff failed to act with reasonable care to take advantage of the safeguards or to avoid harm otherwise.

### TWELFTH DEFENSE

### (Failure to Mitigate)

12.     Plaintiff is not entitled to damages for any cause of action purported to be alleged in his Complaint to the extent he failed to mitigate his alleged damages.

3

**THIRTEENTH DEFENSE**

**(After-Acquired Evidence)**

13.　To the extent discovery may disclose information which could serve as a basis for the termination of Plaintiff's employment, Plaintiff is barred from recovery by the after-acquired evidence doctrine.

**FOURTEENTH DEFENSE**

**(Offset)**

14.　Any recovery on Plaintiff's Demand, and each cause of action alleged therein, is barred in whole or in part because Plaintiff is entitled to an offset for any monies Plaintiff received from any source after he ceased to be employed under the doctrine prohibiting double recovery set forth by *Witt v. Jackson*, 57 Cal. 2d 57 (1961), and its progeny.

**FIFTEENTH DEFENSE**

**(Punitive Damages)**

15.　Plaintiff may not recover punitive damages for discriminatory employment decisions, if any, to the extent that those decisions are contrary to Defendant's written policies instituted against wrongful conduct.

**SIXTEENTH DEFENSE**

**(Constitutional Ban On Punitive Damages)**

16.　Defendant is not liable for any alleged exemplary or punitive damages because such damages violate its rights under the United States and California Constitutions, including, but not limited to, its right to due process and against excessive fines.

**PRAYER**

Wherefore, Defendant prays for judgment as follows:

1.　That Plaintiff take nothing by the Complaint;

2.　That judgment be entered in favor of Defendant and against Plaintiff on all causes of action;

3.　That Defendant be awarded reasonable attorney's fees according to proof;

4.　That Defendant be awarded the costs of suit incurred herein; and

4

311445408v.1

5.    That Defendant be awarded such other and further relief as the Court may deem appropriate.


DATED: June 3, 2024                    SEYFARTH SHAW LLP


                                       By: /s/ Joshua A. Rodine
                                           Joshua A. Rodine
                                           Attorneys for Defendant
                                           CONCORDE CAREER COLLEGES, INC.

5

311445408v.1

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA            )
                                )    SS
3

COUNTY OF LOS ANGELES          )

4

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 2029 Century Park East, Suite 3500, Los Angeles, California 90067.  On June 3, 2024, I served the within document(s):

5

6

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

7

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

8

9

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

10

☐   by placing the document(s) listed above in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

11

12

☐   by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

13

14

Timothy D. McGonigle, Esq.       Email: tim@mcgoniglelaw.net;
Timothy D. McGonigle Prof. Corp.
15

1880 Century Park East, Suite 516    ***Attorneys for Plaintiff***
Los Angeles, CA 90067           ***KIMBERLY BANKSTON-BRADSHAW***
16

Tel:  (310) 478-7110 /

17

     I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

18

19

20

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

21

22

     Executed on June 3, 2024, at Los Angeles, California.

23

*Fern Jenkins*
_____
24

Fern Jenkins

25

26

27

28

311445408v.1



(StatusOnLine.aspx?sessionid=3e6c657a-20da-4a6c-94ae-07f7b1ae8c90)

| | | Fee Name | Amount |
|---|---|---|---|
| **Filing Type:** | Subsequent Filing | Filing Fee | 435.00 |
| **Status:** | Submitted | Total Service Fees | 5.00 |
| **Envelope Number:** | 15525256 | Convenience Fee | 12.10 |
| **Court System:** | Tyler - San Bernardino - Unlimited - San Bernardino | **Total Fees** | **452.10** |
| **Case Number:** | CIVSB2413668 | | |

**Case Title:** CIVSB2413668 - BANKSTON-BRADSHAW-v-CONCORDE CAREER COLLEGE et al

**Case Category:** Civil - Unlimited

**Case Type:** Wrongful Termination Unlimited

**Filing Attorney:** JOSHUA RODINE

**Order:** LA528447

**Ord. Date:** 6/3/2024

**Client Ref:** 108241.000032

**Client:** SEYFARTH SHAW LLP / CC (LA239)

**Contact:** Fern Jenkins (fjenkins@seyfarth.com)

**Parties In Case:**

| Party Type | Party Name | Lead Attorney |
|---|---|---|
| Plaintiff | KIMBERLY BANKSTON-BRADSHAW | Timothy D. McGonigle PC |
| Defendant | CONCORDE CAREER COLLEGE | |
| Defendant | Does 1 through 20, inclusive | |

**Filings In Order:**

| Filing Code | Reference Number | Description | Filing Status | Cancel |
|---|---|---|---|---|
| Answer Filed | LA528447 | Answer Filed | Submitted | Cancel |

**Reference:** LA528447

**Party Responsible For Payment:** CONCORDE CAREER COLLEGE

**Payment Account:** Samira Sadri

Back To Completed Orders